## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| GERALDINE WALLUS<br>　　　　　Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>　　　　　Defendants. | Court File No. 20-cv-1745 |
| MUSTAFA SULTAN,<br>　　　　　Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>　　　　　Defendants. | Court File No. 20-cv-1747 |
| JEFFREY BOYETTE,<br>　　　　　Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>　　　　　Defendants. | Court File No. 20-cv-1749 |
| JAY WASYLYNA,<br>　　　　　Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>　　　　　Defendants. | Court File No. 20-cv-1753 |

| | |
|---|---|
| ROBERT WALLACE,<br>　　　　　Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>　　　　　Defendants. | Court File No. 20-cv-1757 |
| FOREST TAYLOR,<br>　　　　　Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>　　　　　Defendants. | Court File No. 20-cv-1758 |
| DOUGLAS BRACA<br>　　　　　Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>　　　　　Defendants. | Court File No. 20-cv-1763 |
| GARY MARTIN<br>　　　　　Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>　　　　　Defendants. | Court File No. 20-cv-1765 |

| | |
|---|---|
| RUSSEL NISBET,<br>                    Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>                    Defendants. | Court File No. 20-cv-1769 |
| VAUGHN SCHER<br>                    Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>                    Defendants. | Court File No. 20-cv-1771 |
| COREY SHOTT,<br>                    Plaintiff,<br><br>v.<br><br>3M COMPANY and<br>AEARO TECHNOLOGIES LLC,<br>                    Defendants. | Court File No. 20-cv-1772 |

## PLAINTIFFS' OMNIBUS MEMORANDUM IN SUPPORT OF MOTIONS TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION

A group of individual claimants filed separate actions in Minnesota state court against Defendants 3M Company and Aearo Technologies, LLC; Defendants removed those actions.[1]  By agreement of the parties, and for the sake of economy,

---

[1] There are 11 such causes.  They are: (1) *Geraldine Wallus v. 3M Co.*, et al., Case No. 20-cv-1745; (2) *Mustafa Sultan v. 3M Co.*, *et al.*, Case No. 20-cv-1747; (3) *Jeffrey Boyette v. 3M Co.*, et al., Case No. 20-cv-1749; (4) *Jay Wasylyna v. 3M Co.*, *et a*l., Case No. 20-cv-1753; (5) *Robert Wallace v. 3M Co.*, *et al.*, Case No. 20-cv-1757; (6) *Forest Taylor v. 3M Co.*, *et al.*, Case No. 20-cv-1758; (7) *Douglas Braca v. 3M Co.*, *et al.*, Case No. 20-cv-1763; (8)

3

Plaintiffs have prepared an omnibus memorandum in support of their separate motions to remand for lack of subject matter jurisdiction. The same memorandum and all exhibits have been filed separately in each of the individual causes to ensure the record is complete in each.

As has been true in prior circumstances, Defendants remove Plaintiffs' state-law, failure-to-warn claim, arguing the Court has jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442, to decide its asserted government contractor defense—which has now been rejected several times, both by this Court and the MDL court. *See Graves v. 3M Co.*, __ F. Supp. 3d __, 2020 WL 1333135, at *6 (D. Minn. Mar. 23, 2020); *Trail v. 3M Co.*, No. 20-1153, 2020 WL 4193868, at *4 (D. Minn. July 29, 2020); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 3:19md2885, 2020 WL 4275646, at *20 (N.D. Fla. July 24, 2020) (**Ex. A**). Defendants now add an unfounded combatant activities defense as well to their removals of the claims asserted by Plaintiffs Taylor and Nisbet. *See Taylor*, Doc. 1 at 13-15.[2] And in all causes, Defendants further remove under the general removal statute, 28 U.S.C. § 1441, claiming this Court has federal enclave jurisdiction because they surmise that *some* injuries may have occurred on federal enclaves. *Id.* These bases for jurisdiction are no sounder than the government contractor defense this Court has

---

*Gary Martin v. 3M Co., et al.*, Case No. 20-cv-1765; (9) *Russell Nisbet v. 3M Co., et al.*, Case No. 20-cv-1769; (10) *Vaughn Scher v. 3M Co., et al.*, Case No. 20-cv-1771; and (11) *Corey Shott v. 3M Co., et al.*, Case No. 20-cv-1772.

[2] Because the broadest arguments for removal are those included in the notice in claimant Forest Taylor's case - it predicates removal upon the purported availability of the government contractor and combatant activities defenses, while also asserting federal enclave jurisdiction - Plaintiffs' references to the operative notice and associated pleadings will be to the documents filed in Case No. 20-cv-1758 unless otherwise noted.

already rejected.  This Court should reject Defendants' attempts to remove civilian, state-law failure-to-warn claims just as it has previously done.

## FACTUAL BACKGROUND

The Court has seen these facts before.  *See, e.g., Graves*, 2020 WL 1333135, at *1–2; *Trail*, 2020 WL 4193868, at *1–2.  Plaintiffs are civilian users of Defendants' Combat Arms version 2 earplugs.  *See, e.g., Taylor*, Doc. 1-1 at ¶¶ 8-12.  The earplugs, as this Court is aware, tended to imperceptibly loosen if worn without following the proper fitting instruction.  *Id.* at ¶ 17-18.  When loosened, the earplugs allowed damaging sounds to enter the ear.  *Id.* at ¶ 17.  The civilian Plaintiffs used the earplugs without receiving proper fitting instructions from Defendants and suffered injuries as a result.  *Id.* at ¶¶ 43-55.

Defendants yet again remove.  They persist in asserting a federal government contractor defense against all Plaintiffs, despite this Court's and the MDL court's rulings against them on the issue.  *See, e.g., Taylor*, Doc. 1 at 12–14. They now also assert a combatant activities defense as to Plaintiffs Taylor and Nisbet, although there is no allegation either Defendant ever participated in any battlefield activities alongside the military.  *Id.* at 13-15.  And they also assert that this Court has federal enclave jurisdiction over all Plaintiffs, even though they do not identify any federal enclave that Plaintiffs are alleged to have visited.  *Id.* at 15-17.

Plaintiffs move to remand.  As with *Graves* and *Trail*, Plaintiffs respectfully request a ruling before the JPML orders transfer of this case to the MDL court since the relief of remand will be delayed by transfer to a court without jurisdiction over

their claims. Plaintiffs timely objected to the conditional transfer order in this cause[3] and will file motions to vacate those orders. Based on the established briefing schedules, Plaintiffs anticipates those motions to vacate being heard at the Panel's December 3, 2020 session.

## ARGUMENT

This Court lacks subject matter jurisdiction over this case because 3M cannot show it has a colorable federal defense to the Plaintiffs' claims. The MDL court's recent opinion granting summary judgment to the MDL plaintiffs on Defendants' government contractor defense creates an unsurmountable hurdle for Defendants to clear. Armed with the history of Defendants' previous removal attempts as well as the recent summary judgment order from the MDL Court regarding the government contractor defense, Plaintiffs' instant motion to remand should be granted.

**I.    Defendants Are Precluded from Obtaining Jurisdiction via a Government Contractor Defense.**

This Court has already precluded Defendants from asserting jurisdiction based on the government contractor defense in a case with materially identical allegations. *Trail*, 2020 WL 4193868, at *4. Defendants offer no reason there should be a different result here. *Taylor*, Doc. 1 at 11-13. Indeed, there is now further reason to preclude government contractor jurisdiction. The MDL court has very recently granted summary judgment to the MDL plaintiffs on Defendants' government contractor defense as to *all* claims, design defect and failure to warn.

---

[3] *See* MDL No. 2885, ECF No. 835, 836, 853.

**Ex. A** at 55–56.  This Court should again preclude Defendants from asserting the government contractor defense as a basis for jurisdiction.  Plaintiffs additionally request that Defendants withdraw this assertion of jurisdiction.  Given this Court's and the MDL court's rulings on the issue, Defendants have no basis to continue removing to federal court based on the government contractor defense.  With this clear precedent, any argument related to the government contractor defense should be stricken.

## II.   Defendants Cannot Obtain Jurisdiction via a Combatant Activities or Government Contractor Defense.

As this Court is well aware, where a complaint pleads only state law claims, a federal court does not have jurisdiction based on a federal defense. *See, e.g., Aetna Health Inc. v. Davila,* 542 U.S. 200, 207 (2004). Here, the exception invoked by Defendants is the Federal Officer Removal Statute. 28 U.S.C. § 1442(a)(1). The statute provides that cases against federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

To satisfy the Federal Officer Removal Statute, the removing defendant must plausibly allege that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal connection between the defendant's actions and the official authority; and (4) the defendant raises a "colorable" federal defense. *See Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012).  Defendants fail to meet three prongs of the test—the "acting under,"

"causal connection," and "colorable defense" requirements—for either a government contractor or combatant activities defense.

### A.     The Defendants do not Satisfy the "acting under" Requirement

Defendants do not satisfy the requirement that they were "acting under" the direction of a federal officer with respect to the earplugs.  While plaintiffs in past cases did not dispute the acting under requirement was satisfied, the MDL Court's recent opinion shows that Defendants cannot satisfy this prong, either.

In their removal papers, Defendants cursorily declare that this requirement is met because "Plaintiff challenges Defendants' conduct while designing, testing, and writing instructions for the CAEv2."  *See, e.g., Taylor,* Doc. 1 at 7.  But, as the Defendants well know, this Complaint does not assert a cause of action for design defect – only failure to warn.  Defendants have tried, and failed, multiple times to suggest that Plaintiffs' claims are design-defect claims; this Court has found, under a virtually identical Complaint, that "design-defect claims are not made here." *Trail v. 3M Co.,* 20-cv-01175, Doc. 22 at 11.

In order to satisfy the "acting under" requirement of § 1442(a)(1), a private person's actions "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012) (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007)).  Not all relationships between private entities and the federal government suffice to effect removal under the federal officer removal statute.  *Id.*  The Supreme Court has explained that "[g]overnment contractors fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and

the Government is an unusually close one involving detailed regulation, monitoring, or supervision." *Watson,* 551 U.S. at 153. Moreover, although the words "acting under" are "broad," the Supreme Court has emphasized that they are not "limitless." *Id.* at 151. Here, determining the scope of the relationship between Defendants and the military is the issue.

The sale of a standardized item – even when a contract between the contractor and the U.S. government existed related to that product – does not raise the relationship to one that satisfies the "acting under" element of this test. *Mayor & City Council of Baltimore v. BP P.L.C.,* 952 F.3d 452, 461–62 (4th Cir. 2020) (analyzing fuel supply contracts between a private defendant and Navy in which defendant was tasked with supplying fuel that met detailed specifications and established detailed branding and advertising requirements and determining that "acting under" requirement not met). The sale of these earplugs to the military is analogous to the sale of fuel to the military. It is essentially a commodity, commercial item that the military chose to purchase, and as such, does not allow Defendants to invoke federal jurisdiction under §1442(a) in this case. Defendants will protest that these earplugs were conformed to the military's standards—but those protestations are not fundamentally different than those made by the defendant in *Baltimore.*

Defendants aver that the "acting under" requirement is met in this case because Defendants "designed and manufactured the CAEv2 at the direction of the U.S. military to meet the military's specific needs to provide hearing protection and developed fitting instructions in coordination with the U.S. military. *See, e.g.,*

*Taylor*, Doc. 1 at 8.  However, the MDL Court recently ruled on cross-summary judgment motions that Defendants "had no contractual relationship with the Army regarding the design of the CAEv2," **Ex. A** at 32, and granted summary judgment to the Plaintiffs on the government contractor defense for both the design defect claims as well as the failure to warn claims. [4]  In completing a thorough review and analysis of the evidence, the MDL Court found that the Defendants were not subjected to "reasonably precise specifications" from the Federal Government.  *E.g. Id.* at 44.  More damaging for Defendants in these failure-to-warn cases is the MDL Court's finding that "[t]here is no evidence— none—that the Army prohibited Aearo from warning of alleged dangers inherent in the use of the CAEv2." *Id.* at 54. The MDL court further found that "Defendants simply cannot show that the Army substantively approved (or rejected) certain warnings for the CAEv2." *Id.*  After putting forward their best evidence on the relationship between themselves and the Federal Government with respect to the exact products at issue – Defendants fall short. As such, Defendants have not established that they satisfy the "acting under" requirement and this matter should be remanded.

### B.   The Defendants do not Satisfy the "causation" Requirement

This Court has previously examined the "causation" requirement of the test in related matters and has held that, given the low hurdle, 3M demonstrated that "the warnings and instructions for its earplugs plausibly have some connection to,

---

[4] The MDL Court has also denied a motion to certify its order on those motions for interlocutory review.  *See* **Ex. B**.

or association with, governmental actions."   *Graves*, 2020 WL 1333135, at *3.
Plaintiffs respectfully ask this Court to reconsider this ruling in light of the MDL
Court's summary judgment opinion.

As the Court is aware, the federal officer removal statute permits removal
of actions "for or relating to any act under color of office."  28 U.S.C. § 1442(a)(3).
While this statute sweeps broadly, it still requires a connection to official authority
or official duty, not merely to a federal official.  *See Willingham v. Morgan*, 395 U.S.
402, 409 (1969) ("Past cases have interpreted the 'color of office' test to require a
showing of a 'causal connection' between the charged conduct and *asserted official
authority*.") (emphasis added).  This statutory requirement makes sense.  Without
it, a federal officer could remove any suit, irrespective of the suit's relationship to
official authority—could remove, as the Seventh Circuit colorfully put it, a trespass
suit that occurred while the officer was taking out the garbage. *Ruppel v. CBS Corp.*,
701 F.3d 1176, 1181 (7th Cir. 2012).

3M cannot show causation because it cannot show any connection to any
official authority.   "[C]ourts often merge the acting under / causal relationship
analysis . . . with a claim of a common law government contractor defense as set
forth in *Boyle*."  *Hilbert v. Aeroquip, Inc.*, 486 F. Supp. 2d 135, 147 (D. Mass 2007).
This is because "under *Boyle* a defendant must establish that the United States
approved reasonably precise specifications," and thus "the government's role in
setting requirements is critical under the government contractor defense."  *Id.* at
147, n.11.  In the time since the Court found the causal connection requirement
satisfied in *Graves*, the MDL Court has specifically found that "Defendants have

11

failed to marshal evidence that would enable a reasonable jury to find in their favor on the first requirement; namely, that the government approved reasonably precise specifications for the CAEv2. **Ex. A** at 33–34. Defendants' sole causation argument—that they designed the earplugs because of federal specifications—should therefore fail. *See, e.g., Taylor,* Doc. 1 at 9. Further, the MDL court's conclusion that there was no contract between Defendants and the military demonstrates that there is no connection between Defendants' earplugs and any official authority. In other words, Defendants cannot show "the government made [them] do it." *Brinson v. Raytheon Co.*, 571 F.3d 1348, 1351 (11th Cir. 2009).

Courts will remand absent a showing of causation. *See Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 150 (D. Mass. 2009). The MDL court order confirms that Defendants' causation argument fails. Plaintiffs' request for remand should be granted.

### C.    Defendants have not alleged a colorable combatant activities defense as to Plaintiffs Taylor and Nisbet

Defendants' claimed combatant activities defense, asserted in the notices removing the claims asserted by Plaintiff Taylor, rests on a provision of the Federal Tort Claims Act. *See Taylor*, Doc. 1 at 13-15; *Nisbet*, Doc. 1 at 13-15. But the Federal Tort Claims Act, by its plain terms, does not apply in this action. Nor does that statute authorize a judicially-created defense for Defendants. And even if it did, Defendants have not shown they could avail themselves of the defense. Nothing in the notice of removal suggests the Defendants have been anywhere near a

battlefield in connection with the earplugs.  So even if the combatant activities defense exists, Defendants do not have a colorable argument that it applies here.

### 1.    The Federal Tort Claims Act does not apply.

Defendants' notice of removal correctly identifies the combatant activities defense as an exception to the Federal Tort Claims Act's limited waiver of the United States' sovereign immunity.  *See, e.g., Taylor*, Doc. 1 at 13-14 (citing 28 U.S.C. § 2680(j)).    But the notice fails to mention that Defendants, both private corporations, have no sovereign immunity themselves and cannot vicariously assert the immunity that would belong to United States.  Whatever sovereign immunity the Federal Tort Claims Act's combatant activities exception preserves for the *federal government* means nothing here.  Defendants have no sovereign immunity to preserve.

The United States' immunity from suit "is absolute and is inherent in the government's status *as a sovereign*."  *Schneider v. United States*, 27 F.3d 1327, 1332 (8th Cir. 1994) (emphasis added).  The Federal Tort Claims Act waives the *government's* immunity from tort claims, lest individuals have no legal recourse for injuries resulting from its negligence.  *See* 28 U.S.C. § 2674.  Numerous exceptions limit the waiver, including the combatant activities exception.  28 U.S.C. § 2680(j).  Thus, the United States retains its immunity from claims that come within the combatant activities exception.  But the United States' immunity is irrelevant here.  "The doctrine of sovereign immunity *may not* be extended to cover the fault of a private corporation, no matter how intimate its connection with the government."  *Foster v. Day & Zimmerman, Inc.*, 502 F.2d 867, 874 (8th Cir. 1974) (emphasis added).

13

So even if the United States would have sovereign immunity from any of Plaintiffs' claims, the Defendants cannot.

### 2. The combatant activities exception does not preempt state tort law.

Defendants further claim that the inapplicable combatant activities exception "create[s] a federal defense" the state-law failure-to-warn claims asserted by Plaintiffs Taylor and Nisbet. *See, e.g., Taylor*, Doc. 1 at 14. The Federal Tort Claims Act, however, does no such thing. The Court should reject the out-of-circuit authority holding to the contrary.[5]

Defendants' claimed defense finds no support in the Federal Tort Claims Act itself. The statute's text—the touchstone for all statutory interpretation, *see Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)—says absolutely nothing about creating a federal defense to state-law tort claims against private corporations. *Saleh v. Titan Corp.*, 580 F.3d 1, 21 (D.C. Cir. 2009) (Garland, J., dissenting) ("Nothing in the language of the [Federal Tort Claims Act] applies to suits brought against independent contractors."). Indeed, nothing in the statute applies to private corporations at all. To the contrary, the Federal Tort Claims Act expressly *excludes* contractors from the definition of federal employee and federal agency. 28 U.S.C. § 2671; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 341(4th Cir. 2014) ("The FTCA explicitly excludes independent contractors from its scope."). Considering this text in light of the "presumption against preemption," *Wyeth v.*

---

[5] While other circuits have held the combatant activities exception creates a federal common law defense, the Eighth Circuit has not done so.

*Levine*, 555 U.S. 555, 564–65 & n.3, 575 (2009), it is beyond dispute that Congress did not intend to give Defendants a defense to a state-law claim when it passed the combatant activities exception.

The cases on which Defendants rely departed from the statutory text and instead fashioned judge-made preemption rules, following *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). *See, e.g.*, *Saleh*, 580 F.3d at 5. But there is no warrant for doing that, either. "[C]ases in which judicial creation of a special federal rule would be justified" are "few and restricted, limited to situations where there is a significant conflict between some federal policy or interest and the use of state law." *O'Melveny & Meyers v. FDIC*, 512 U.S. 79, 87 (1994) (citation and quotation marks omitted). Defendants identify no federal interest or policy that needs protecting. Without such a policy or interest, there's no justification for preempting state law.

In any event, some courts have said "[t]he purpose underlying [the combatant activities exception] is to foreclose state regulation of the *military's* battlefield conduct and decisions." *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 480 (3d Cir. 2013) (emphasis added). But the Federal Tort Claims Act reflects no federal policy or interest in protecting *private companies* from tort suits— it expressly excludes independent contractors. 28 U.S.C. § 2671; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d at 341. That Congress wanted to foreclose tort suits based on the *military's* battlefield conduct does not mean that it intended the same result for private contractors. Indeed, the express exclusion of contractors from the statute's scope suggests opposite.

Beyond the statute, there's evidence the government does *not* have a policy or interest in shielding private companies from tort suits based on their conduct during combat. The Department of Defense rejected rulemaking that sought to extend *Boyle* in the way Defendants ask the Court to do. *Saleh*, 580 F.3d at 27 (Garland, J., dissenting) (laying out the rulemaking). And it is perfectly reasonable that the government might prefer that private companies face the liability consequences of their battlefield conduct.

Given the lack of evidence of a federal policy or interest, and in the absence of Defendants even trying to articulate a federal policy or interest, this Court should not create a common law federal defense out of the combatant activities exception.

> **3.    Even if the combatant activities defense exists, Defendants' allegations do not establish a colorable defense in this case.**

Assuming the combatant activities exception even *could* preempt state law, it does not do so in these cases. In cases that apply the combatant activities exception, that exception is narrowly circumscribed. Defendants' own authority states the test this way: "During wartime, where a private service contractor is *integrated into combatant activities* over which the military *retains command authority*, a tort claim arising out of the contractor's engagement in such activities shall be preempted." *Saleh*, 580 F.3d at 9 (emphasis added). Defendants do not satisfy either prong.

First, Defendants were not - by any stretch - integrated into combatant activities. To be sure, "combatant activities" is not limited to "engagement in

physical force." *In re KBR*, 744 F.3d at 351.  But it does require that the activities at issue be "both necessary to and in *direct* connection with actual hostilities." *Harris*, 724 F.3d at 481 (quotation omitted and emphasis added).  It follows that conduct far from the battlefield does not count. *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1106 (N.D. Ill. 2015) ("Not every activity tangentially connected with the military will qualify for protection.").  By that standard, courts have concluded that activities adjacent to combat, such as "performing waste management and water treatment *to aid military personnel in a combat area*" counts as combatant activities. *In re KBR*, 744 F.3d at 351 (emphasis added).  "[S]upplying ammunition to fighting vessels in a combat area during war" has been, too. *Id.*

Defendants did nothing that resembles combatant activity.  There is no allegation they ever went anywhere near a battlefield to supply their earplugs. Instead, by all appearances, they supplied earplugs to the military, to private companies, and to retailers in the United States, which in turn distributed them to servicemembers, contractors, and the public.  This attenuated link does not place Defendants anywhere close to combat.  And it should not give Defendants the same protection courts have extended to contractors in the thick of it, assisting the military on the battlefield. *E.g.*, *In re KBR*, 744 F.3d at 351.  Plaintiffs are aware of no court that has given a contractor immunity simply because its products ended up on the battlefield through the actions of others.  That's not surprising; doing so would create unnecessary inconsistencies. Defendants' position would have them immune from a plaintiff who happened to be deployed while leaving them open to suit from a plaintiff who wasn't, even if both received the earplugs at the same

17

basic training.  The Court should reject Defendants' combatant activities defense so as to prevent that result.

Second, the military did not retain "command authority" over Defendants. The Defendants themselves don't allege they were anywhere within the military chain of command.  And there's no indication any military officer had any say in Defendants' day-to-day operations or tasks in the way a commander would have over a contractor fully integrated into the chain of command.  Put differently, a contractor integrated in the chain of command would violate the UCMJ if he disobeyed an order.  10 U.S.C. § 802(a)(10); 10 U.S.C. § 892.  Defendants would not, so far as the record shows.  In fact, the MDL court found on a full record that the U.S. Army "gave Aearo complete freedom to decide whether and how to proceed" in designing the earplugs at issue.  *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, Doc. 1280 at 41 (N.D. Fla. July 24, 2020).  Defendants cannot now claim the military had any command authority over them.

Perhaps recognizing they cannot satisfy the foregoing test—the one their own authority sets out—Defendants ask this Court to create a new standard.  *See, e.g., Taylor*, Doc. 1 at 14.  They urge the Court to hold that the defense applies where there is "the presence of combat activities" and "that such activities occur during a time of war."  *Id.*  This cannot be the standard.  Defendants are invoking a judge-made preemption defense, and in such cases federal law preempts state law only when there is a "significant conflict" between state law and an important federal policy.  *O'Melveny*, 512 U.S. at 87.  "[T]he scope of displacement of the preempted non-federal substantive law must be carefully tailored so as to coincide with the

18

bounds of the federal interest being protected." *Saleh*, 580 F.3d at 8. As *Boyle* put it, "conflict there must be." 487 U.S. at 508. At best, the interest here is in "foreclose[ing] state regulation of the military's battlefield conduct and decisions." *Harris*, 724 F.3d at 480. Defendants' test—requiring only the existence of combat— would preempt state law regulating all manner of conduct with no effect on the military's battlefield conduct and decisions. By Defendants' proposed standard a contractor might, for example, be insulated from liability even if it directly disobeyed military orders. *See id.* (rejecting a formulation of the conflict test that would insulate contractors from liability even when they violated their contracts). There is no federal policy in insulating contractors from liability for their breaches of military orders, and thus no conflict warranting preemption. The Court should reject Defendants' proposed test.

Defendants' flawed test leads them erroneously to focus on plaintiff's conduct. *E.g.*, *Taylor*, Doc. 1 at 14–15 (discussing plaintiffs' employment in combat zones). They seem to think that a supplier of faulty equipment is immune from suit if the *plaintiff* is injured in a combat zone. That, though, is not how the combatant activities defense works. Every case applying the defense (including those Defendants cite) has focused on whether the *contractor*'s conduct is a combatant activity. *See In re KBR*, 744 F.3d at 351 (waste management and water treat functions to military personnel in combat zone deemed combatant activity); *Saleh*, 580 F.3d at 1, 10–11 (contractors immune from suit for torture). That follows from the defense's purpose: to protect battlefield decision-making by immunizing contractors acting pursuant to military control. The defense is not concerned with

19

whether plaintiffs were injured during combat; the question, rather, is whether holding the *contractor* liable for its conduct during combat would impinge the military's combat decision-making.  The answer here is no.

*      *      *

The Federal Tort Claims Act does not give Defendants a combatant activities defense, and they haven't established (or even correctly stated) the elements of the defense even if it did.  This is not a colorable defense.  The Court should remand to state court.

### D.   The Defendants do not establish a colorable government contractor defense as to any of the Plaintiffs, either.

As in *Graves*, Defendants' notices of removal do not allege any significant conflict between its Minnesota state law duty to warn and its contractual obligations to the United States. Absent such a conflict, the government contractor defense fails as a matter of law.

As this Court recently held, to show a colorable government contractor defense, 3M must show either: (1) "the government exercised such control that a conflict with state law would be implied" or (2) that 3M could not have "complied with its governmental requirements as well as state law."  *Graves*, 2020 WL 1333135, at *5.  3M must make at least this showing to establish jurisdiction here. As did the plaintiff in *Graves*, Plaintiffs maintain that 3M must show that its state tort duty to warn is "'precisely contrary' to the duty imposed by the government contract."  *Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487, 1488 (11th Cir. 1990) (quoting *Boyle*, 487 U.S. at 509).

20

This standard follows from the nature of the government contractor defense, which is a limited preemption doctrine. The government contractor defense preempts state law only to the extent "a significant conflict exists between an identifiable federal policy or interest and the operation of state law." *Boyle*, 487 U.S. at 507 (internal quotation marks and citations omitted and alteration adopted). As the Supreme Court explained in *Boyle*, where a "contractor could comply with both its contractual obligations and the state-prescribed duty of care," "[n]o one suggests that state law would generally be pre-empted" by the government contractor defense. 487 U.S. at 509. In short, to assert the government contractor defense, "conflict there must be." *Id.* at 508.

There is no such conflict here, just as there was not in *Graves*. By any standard, 3M has not established the requisites of a "significant conflict" between its obligations under the military contract to produce the earplugs at issue and its state law duty to warn Plaintiffs of risks associated with the earplugs. 3M has not identified any direct conflict between any warning the military instructed it to give or prohibited it from giving and the warnings that state law requires. *See, e.g., Taylor*, Doc. 1 at 11–13. All 3M says is that the military "reviewed and approved" civilian instructions. *Id.* at 12. But what 3M calls military "review and approval," this Court has already determined was merely 3M "voluntarily approach[ing]" the military for advice about civilian instructions, which 3M found useful and incorporated. *Graves*, 2020 WL 1333135, at *5. There was not in *Graves* and is not here any indication that 3M was "obligated to seek government review, or that governmental approval of the commercial product's warnings was necessary or

21

required." *Id.* Absent such a showing, 3M cannot establish a government contractor defense. *See id.* at *5–6.

3M has the burden of establishing this Court's removal jurisdiction in its notice of removal. *See* 28 U.S.C. § 1446(a) (requiring notices of removal to "contain[] a short and plain statement of the grounds for removal"); *Moore v. Kansas City Pub. Schs.*, 828 F.3d 687, 691 (8th Cir. 2016) (making clear that"[t]he proponents of federal jurisdiction bear the burden to establish federal subject matter jurisdiction." (internal quotation marks omitted)). 3M need not win its case to establish jurisdiction, of course, *see Jacks*, 701 F.3d at 1235, but it must do more than merely identify a federal defense and recite its elements; it must aver sufficient facts to show the defense is colorable. *Id.*; *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (requiring removing defendants to plausibly plead facts supporting removal in the same manner required by Federal Rule of Civil Procedure 8).

This Court has already concluded that 3M has not done so in an identical case. *Graves*, 2020 WL 1333135, at *6. So far as 3M's notices of removal show, 3M could have both supplied earplugs to the military according to specifications *and* warned Plaintiffs about the dangers of using the earplugs improperly. The government contractor defense does not preempt state law where, as here, the defendant's own allegations indicate its government contract and state law duties do not conflict. *See id.*; *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 143 (D. Mass. 2009) (stating that "[g]enerally speaking, a manufacturer could give the government precisely the product it ordered while complying with its state-law

duties to warn.").

Further, despite doing so in *Graves*, 3M has not submitted any affidavits or documentary evidence that would support its defense, as defendants routinely do when removing on the basis of the government contractor defense. In fact, the defendants in many of the cases 3M cites in its notice of removal did so. *See, e.g., Taylor*, Doc. 1 at 10-11; *Zeringue v. Crane Co.*, 846 F.3d 785, 791 (5th Cir. 2017) (observing that "[t]o support this claim [to a government contractor defense], Crane supplied sample military specifications and three affidavits."); *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (finding that "[i]n support of removal, Crane presented several affidavits and numerous documentary exhibits . . . ."); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 774–75 (E.D. Pa. 2010) (discussing five affidavits submitted in support of government contractor defense). Other cases cited elsewhere in Defendants' removal establish the same principle. *See Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ 5990(BSJ), 2011 WL 5109532, at *1 (S.D.N.Y. 2011) (stating that "[t]o support their contentions for and against removal, the parties submitted numerous declarations about the contracting relationship."). Indeed, 3M cites a case where it was the defendant and submitted documentary evidence to support its government contractor defense. *See Ayo v. 3M Co.*, 2018 WL 4781145, *8, 11–14 (E.D.N.Y. Sept. 30, 2018) (identifying documentary evidence 3M and other manufacturing defendants submitted to support removal). 3M's own authority demonstrates how short it has come of showing it has a colorable federal defense. And its decision not to submit evidence here after it did in *Graves* is telling—it is because 3M has nothing new and knows

the evidence shows there is no federal jurisdiction.

This Court in *Graves* joined numerous other federal courts in holding that the government contractor defense does not preempt failure-to-warn claims where there is no evidence that the military specified or approved the warnings at issue. *E.g.*, *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 812–13 (9th Cir. 1992) (holding the government contractor defense inapplicable where the manufacturer "could have provided detailed and prominent statements regarding the dangers of asbestos insulation" consistent with the military's design specifications for the product); *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 630–32 (2d Cir. 1990) ("Here the Navy specification requiring that Eagle-Picher's cement product include asbestos does not conflict with a state law duty to warn and accordingly does not command its displacement."); *Dorse*, 898 F.2d at 1489–90 ("The defendant's exhibit of Navy Department specifications does not contain any prohibition against health warnings on the product."); *Sanchez v. Air & Liquid Sys., Corp.*, 2018 WL 4502280, *3 (N.D. Cal. Sept. 20, 2018); *Hukkanen v. Air & Liquid Sys. Corp.*, 2017 WL 1217075, *3 (C.D. Cal. March 31, 2017); *Walek v. Boeing Co.*, 2016 WL 910150, *5–6 (C.D. Cal. March 9, 2016); *In re Asbestos Litig.*, 661 F. Supp. 2d 451, 455 (D. Del. 2009); *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 666 (E.D. Tex. 1999) (granting remand where defendant did not provide "any evidence that the federal government exerted any direction or control with regard to *warning* about asbestos"). *Graves* and this line of authority confirms that 3M has failed to show a conflict between federal policy and its state law duties.

This Court accepted in *Graves* that even if the military specified the earplug

*design*, as 3M asserts, that does not change the analysis.  *See Graves*, 2020 WL 1333135, at *3–6.  "It is . . . well established . . . that a defendant may not defeat a state failure-to-warn claim simply by establishing the elements of the government contractor defense with respect to a plaintiff's design defect claim." *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996) (collecting cases). The reason is that a design defect claim rests on a wholly separate category of conduct to a failure-to-warn claim. A design defect claim charges that a manufacturer failed "to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended, as well as an unintended yet reasonably foreseeable use." *Holm v. Sponco Mfg., Inc.*, 324 N.W.2d 207, 212 (Minn. 1982). A failure-to-warn claim, by contrast, charges that a manufacturer failed to "warn end users of a dangerous product if it is reasonably foreseeable that an injury could occur in its use." *Gray v. Badger Min. Corp.*, 676 N.W.2d 268, 274 (Minn. 2004). Given this doctrinal distinction, it does not follow that preemption of a design defect claim will necessarily result in preemption of a failure-to-warn claim.

3M's refrain throughout its notice of removal is that the military established design and performance criteria for the earplugs.  *See, e.g., Taylor*, Doc. 1 at pp. 3–5, 8, 12–13. Even if true, these allegations say nothing about what warnings, if any, that the military required 3M to give. No conflict between federal policy and state law exists if the government did not exercise its discretion to specify or approve the warnings given, even if it exercised its discretion with respect to other aspects

25

of the product. *See Oliver*, 96 F.3d at 1003. Whether or not the military controlled the earplug design, as 3M claims, *see, e.g., Taylor*, Doc. 1 at 12-13, 3M has not shown the military made a similar determination regarding the required warnings.

Those problems cannot be undone by seeking to miscast a failure to warn claim as a design defect claim in the hope of invoking the government contractors defense. A plaintiff is the master of his complaint. He may have a plethora of causes of action and chooses to pursue some or all of them. Plaintiffs' complaints make explicitly clear that their only claim is for failure to warn. *See, e.g., Taylor*, Doc 1-1, at ¶¶ 43-55. In fact, there is only one claim alleged in each Plaintiff's complaint- a failure to warn claim. *Id*. Directly preceding Paragraph 41, in bold and all capital letters the Complaint states "**Count I: Strict Product Liability – Failure to Warn.**" Plaintiffs; Complaint specifically alleges that 3M "had a duty to provide adequate warnings and/or instructions," that "[i]t was foreseeable to Defendants that the Combat Arms™ earplugs would be unreasonably dangerous if distributed without the warning," and that 3M had a "post-sale duty to warn." *Id*. at ¶¶ 46-50. Plaintiffs did not plead a Design Defect claim. 3M's attempt to manufacture a design defect claim from allegations that expressly limit the claim to a failure to warn theory goes against the plain language of Plaintiff's Complaint.

In this effort to gerrymander the pleadings to suit its theory, 3M relies upon inapposite cases. First, 3M concludes from *Koutsoubos v. Boeing Vertol, Div. of Boeing Co.* that:

> [F]ailure-to-warn claims that are "merely repetitive of plaintiff's
> assertions concerning design defects" and only allege that the
> defendants failed to warn that the product "had not been properly

26

> designed, manufactured, assembled and tested" simply repeat design
> defect claims.

Doc 1 at 12-13 (*citing* 553 F. Supp. 340, 344 (E.D. Pa. 1982)).  3M fundamentally

misunderstands *Koutsoubos'* point, which pertains to the fact that the plaintiff in

that case had alleged, in addition to a failure to warn claim, design and

manufacturing defect claims. *See Koutsoubos*, 553 F. Supp. 340, 341; *see also Ramey*

*v. Martin-Baker Aircraft Co.*, 656 F. Supp. 984, 999 (D. Md. 1987), *aff'd sub*

*nom. Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946 (4th Cir. 1989) ("[f]or example,

in *Koutsoubos* …, the plaintiff alleged, in addition to design defects, manufacturing

defects and a failure to warn"). Thus, in *Koutsoubos*, the court found the failure to

warn claim to be "merely repetitive" of the plaintiff's **actually pled** design defect

claim. *Koutsoubos*, 553 F. Supp. 340, 344. 3M's self-serving "summary" of

*Koutsoubos* severely misrepresents *Koutsoubos*.

Second, 3M cites *Nicholson v. United Techs. Corp.* in a similarly misguided

way. *See* 697 F. Supp. 598, 603 (D. Conn. 1988). *Nicholson* states that "[i]n some

cases duty to warn claims merely repeat design defects." *Id*. That quote, however,

was referring to *Koutsoubos*, and specifically the fact that the plaintiff there had

essentially repeated his design defect claim as a failure to warn claim. *Id*. Again,

*Nicholson*, like *Koutsoubos*, is referring to the particular instance where a plaintiff

pleads both a design defect and a failure to warn claim. Here, it cannot be seriously

argued that a design defect claim was pled. Plaintiffs' complaints contain a

singular claim for failure to warn, which is written in bold and all caps.  *See, e.g.,*

*Taylor*, Doc 1-1 at 9.

3M clumsily constructs a strawman in asserting that Plaintiffs' Complaints are really a design defect claim disguised as a failure to warn claim. 3M tried to do the same thing in *Graves*—that is, to persuade the Court that a failure-to-warn claim is "really" a design defect claim—but this Court did not agree. The same is true here. In its argument, 3M ignores Plaintiffs' failure to warn claim is his only claim. Further, 3M completely misinterprets existing case law in an attempt to find any case law to support its dubious position. As 3M's position holds no water, this Court should remand this case back to Minnesota state court.

Because 3M has not plausibly alleged its contractual obligation to the military conflicts with state law, it cannot show its government contractor defense is colorable. Without a colorable government contractor defense, 3M cannot establish that this Court has subject matter jurisdiction under the federal officer removal statute. This Court should therefore remand the case to state court.

## III.   3M does not allege a plausible basis for federal enclave jurisdiction.

Federal enclave jurisdiction stems from the Constitution's Enclave Clause, which gives Congress the power "to exercise exclusive legislation . . . over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." U.S. Const. art. I, § 8, cl. 17. When the United States acquires property under this clause, "the state law in effect at the time of the transfer of jurisdiction continues in force as surrogate federal law" unless and until altered by the federal government. *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) (quotation omitted and alteration adopted); *see Mater v. Holley*,

200 F.2d 123, 124 (5th Cir. 1952) ("[A]ny law existing in territory over which the United States has 'exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law."). Because federal law supplies the rule of decision on federal enclaves, federal question jurisdiction exists. *E.g.*, *id.* at 125. But while Congress has exclusive legislative power over federal enclaves, the state courts retain concurrent jurisdiction with the federal courts. *Id.*

All this matters only if the land in question is a federal enclave. And land only becomes a federal enclave if the United States buys it with a state legislature's consent. *See James v. Dravo Contracting Co.*, 302 U.S. 134, 141 (1937) (Enclave Clause governs only "those cases where the United States acquires lands with the consent of the Legislature of the state"). That much is plain from the Constitution's text. And the Supreme Court has held as much. It is, after all, "not unusual for the United States to own within a state lands which are set apart and used for public purposes. Such ownership and use without more do not withdraw the lands from the jurisdiction of the state." *Id.* It takes purchase *and* state consent to make a federal enclave. *Id.* Defendants fail to show both requisites for the existence of a federal enclave in any of Plaintiffs' cases; thus they fail to show this Court has jurisdiction over any plaintiff's claim.

Defendants' notices of removal concede (as they must) that there is no allegation identifying *where* Plaintiffs suffered hearing damage. *See, e.g., Taylor*, Doc. 1 at 17. As a result, Defendants do not identify any federal enclave or show the requisites thereof—state land purchased by the U.S. with the consent of the

legislature.  State consent ordinarily comes in the form of legislation.  *E.g.*, *Mater*, 200 F.2d at 123 (citing the Georgia statute that ceded state jurisdiction over Fort McPherson to the federal government).  Defendants do not point to a single state statute consenting to exclusive federal jurisdiction over any territory, let alone anywhere Plaintiffs have been.  This federal Court should not, as Defendants do, take the extraordinary step of *assuming* without evidence that any state consented to give the federal government exclusive jurisdiction.  Rather, the Court should hold Defendants to their burden of establishing federal jurisdiction.  Their failure to come forward with evidence or allegation of state consent requires remand.

Without any idea where Plaintiffs were injured, Defendants simply speculate that "one or more" events might have happened in a federal enclave. Doc. 1 at 17.  Their speculation is based on conclusory assertions about the type of noise that injured plaintiffs.  *Id.*  Their surmise lacks merit.  It is more plausible that the damaging noise alleged in the complaint occurred off a federal enclave than on it.

### A. Most of the Moving Plaintiffs Were Injured Wholly Outside of the United States

Eight of the Plaintiffs have appended affidavits to this motion and each of those affidavits establishes that those plaintiffs suffered all or the most substantial part of their injuries outside of the United States, in either Iraq or Afghanistan.  *See Taylor Aff* (**Ex. C**); *Braca Aff.* (**Ex. D**); *Wasylyna Aff.* (**Ex. E**); *Sultan Aff.* (**Ex. F**); *Scher Aff.* (**Ex. G**); *Wallace Aff.* (**Ex. H**).

Plaintiff Taylor was a contractor with both the Army and the Navy at various points in time between 2007 and 2015 and used the 3M CAEv2 earplugs during heavy convoy patrol work in Iraq while stationed with the 10th Mountain Division and while serving as Chief Firearms Instructor at the Iraqi Police School. *See Taylor*, Doc. 1-1 at ¶ 8; **Ex. C** at ¶ 3. Plaintiff Braca was a Counter IED expert contractor who "used the 3M CAEv2 earplugs while on daily patrols in Iraq in 2008, and on several trips working in Afghanistan" between 2009 and 2018. *See Braca*, Doc. 1-1 at ¶ 8-9; **Ex. D** at ¶ 3. Plaintiff Wasylyna was a "Security Coordinator Contractor" with the Army, and wore the earplugs during combat exercises in Iraq and Afghanistan. *See Wasylyna* Doc. 1-1 at ¶ 8-9; **Ex. E** at ¶ 3-4. Plaintiff Sultan was a translator contractor with the Army, working in Baghdad, Iraq, where he wore CAEv2 earplugs "while going out on missions," or riding in convoys, during which he "was exposed daily to loud noises from explosions, car bombs, and heavy machinery." *See Sultan*, Doc. 1-1 at ¶ 8-9; **Ex. F** at ¶ 2-3. Plaintiff Scher was a truck driver with the Army and wore CAEv2 earplugs working in Balad, Baghdad, Basra, and Ozul, Iraq "while operating and around trucks" to haul and transport equipment and other items. *See Scher*, Doc. 1-1 at ¶ 8-9; **Ex. G** at ¶ 2. And Plaintiff Wallace was a firefighter medic for a private contractor to the United States military in Iraq (and, more specifically, in Fallujah, Iraq) where he used the CAEv2 earplugs because of exposure to loud noises. *See Wallace*, Doc. 1-1 at ¶ 8-9; **Ex. H** at ¶ 2.

Importantly, Plaintiffs Braca, Sultan, Scher, and Wallace each avers that he did not use the CAEv2 earplugs in the United States. *See* Ex. D at ¶ 4; Ex. F at ¶ 3;

Ex. G at ¶ 4; Ex. H at ¶ 3.   Additionally, Plaintiff Wasylyna was stationed in the United States only "for a two-week training period at Fort Benning, Georgia" at the beginning of his initial assignment and avers that he did not use the 3M CAEv2 earplugs while at Fort Benning.  *See* Ex. E at 1, ¶¶ 3, 5

### B.   Neither foreign countries nor military installations located in foreign countries are federal enclaves

Iraq is not a federal enclave.  *See Goodwin v. Dyncorp Int'l, LLC*, No. 3:14cv116, 2014 WL 12570917, at *2 (N.D. Fla. May 16, 2014) (holding that Iraq is not a federal enclave).  Neither is Afghanistan.  *See Gavrilovic v. Worldwide Language Resources, Inc.*, 441 F. Supp. 2d 163, 176-177 (D. Me. 2006) (concluding that Bagram Air Force based in Afghanistan is not a federal enclave).  A plain reading of the Enclave Clause demonstrates as much.  The United States did not "purchase" either Iraq or Afghanistan, and no state legislature "consent[ed]" to any purchase (let alone a state legislature embracing the land purchased).  *See* U.S. Const. art. I, § 8, cl 17.  Both are required for the area in question to be deemed a federal enclave. Both are lacking here.

Nor would it make a difference if Plaintiffs wore the earplugs on a U.S. military base in Iraq or Afghanistan.  While authority on the issue is limited, all the cases of which Plaintiffs are aware have rejected the argument that a foreign U.S. military base could be a federal enclave.  *See Badilla v. Nat'l Air Cargo, Inc.*, No. 12-cv-1066A, 2013 WL 5723324, at *4 (W.D.N.Y. Oct. 21, 2013); *Gavrilovic*, 441 F. Supp. 2d at 177; *Nguyen v. Allied Signal, Inc.*, No. C 98-03616, 1998 WL 690854, at *1 (N.D. Cal. Sept. 29, 1998); *see also Hawkins v. St. Louis Rams, LLC*, 2019 WL 367644,

at *2 n.3 (E.D. Mo. 2019) ("It is unclear, however, if [the federal enclave] doctrine applies to military bases on foreign soil."); *Harris v. Kellogg, Brown & Root Servs., Inc.*, 796 F. Supp. 2d 642, 656 n.7 (W.D. Pa. 2011) ("Although the decisions in this area are limited, courts have reasoned that the enclave clause does not apply to a military installation in foreign countries."). The conclusion all these courts have reached "flows from the express language of the enclave clause," which, again, refers only to property acquired with the consent of a state legislature. *Gavrilovic*, 441 F. Supp. 2d at 177. A military base in either Iraq or Afghanistan could not have been purchased with the consent of a state legislature. And any consent would have been irrelevant anyway, because none of the States control any land in Iraq or Afghanistan. The Enclave Clause's reservation of federal jurisdiction is thus inapplicable to Plaintiffs' claim.

Plaintiff Taylor's affidavit does acknowledge that he was assigned to the Navy Expeditionary Combat School in Mississippi for a period of time, that he used 3M CAEv2 earplugs (and other protective devices) in serving as a firearms instructor, and that he was exposed to some loud noises during that time. **Ex. C** at ¶ 3. But that alone is not enough to justify resort to the Enclave Clause's reservation of federal jurisdiction. That is so because minimal exposure to damaging noise on a federal enclave is insufficient to establish federal jurisdiction if most of the injury occurred off an enclave, as is the case here, given the substantial exposure that occurred while Plaintiff was in Iraq. When injuries "occur partially inside and partially outside the boundaries of an enclave, . . . the state's interest increases proportionally, while the federal interest decreases." *Akin*

*v. Big Three Indus.*, 851 F. Supp. 819, 822 n.4 (E.D. Tex. 1994). Relying on that principle, for example, one federal district court granted a motion to remand where a personal injury plaintiff's exposure to asbestos on a federal enclave was "just a small portion of the total exposure: one of 17 locations and during six months of the years-long exposure period." *Ballard v. Ameron Int'l Corp.*, No. 16-cv-6074, 2016 WL 6216194, at *3 (N.D. Cal. Oct. 25, 2016). Defendants do not contend Plaintiff was injured solely on federal enclaves, and the allegations establish that Plaintiff was exposed to damaging sound off of such enclaves.

## C. For All Other Plaintiffs, Defendants Have Not Met their Burden to Establish Jurisdiction Under the Enclave Clause

As of the date this motion was filed, there were no affidavits available from Plaintiffs Nisbet, Shott, or Martin. If those affidavits can be obtained, Plaintiffs will seek to supplement this motion accordingly. But even in the absence of affidavits, the record nevertheless fails to demonstrate that any of those Plaintiffs suffered injury on federal enclaves and that Defendants cannot meet their burden to sustain those removals based on a federal enclave theory, either.

Plaintiff Nisbet "has been an Asset Recovery MHE Contractor" with the Army whose "responsibilities included but were not limited to rifle training, combat situations, and operating heavy equipment." *See Nisbet*, Doc. 1-1 at ¶ 8. Plaintiff Martin was an Equipment Operator with the Army between 2005 and 2018 and wore the earplugs "while operating heavy equipment and around watercraft." *See Martin*, Doc. 1-1 at ¶ 8-9. Even if the Court could presume that all such activities occurred in the United States, the operation of heavy machinery and

watercraft are not activities limited to federal enclaves; indeed, there's likely more heavy machinery and watercraft off them than on them.    Likewise, Plaintiff Shott was a "personal security detachment contractor" with the Army between January 2004 and November 2005, and wore the earplugs "during combat training and shooting range." *See Shott*, Doc. 1-1 at ¶ 8-9.  Even in performing those activities, Defendants' assumption that Plaintiff's injuries "undoubtedly occurred at a facility or areas that qualifies as a federal enclave," *See Shott*, Doc. 1 at 15, is wholly unfounded; even assuming that those injuries occurred on a military installation - which Plaintiff does not concede - not every military installation meets the strict definition of a federal enclave, as previously noted.  Federal jurisdiction cannot be premised upon unproven assumptions. Indeed, all Defendants have shown is that it is *possible* that Plaintiffs were injured on federal enclaves.  But Defendants must show more than the mere possibility of a federal enclave to clear the plausibility threshold.  *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557–58 (2007).  Having failed to do so, they have cannot carry their burden of establishing federal jurisdiction.

### D.      Defendants Cannot Meet their Burden to Support their Removals in a Federal Enclave Theory; Remand is Appropriate

The Court must resolve all doubts in favor of remand.  *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997). Defendants do not identify any federal enclave where any injury occurred and make unsupported leaps to claim these civilian Plaintiffs were injured on enclaves. This does not establish federal jurisdiction.

## CONCLUSION

This Court lacks subject matter jurisdiction over this action, and it can so hold for all of the reasons listed above. Plaintiffs respectfully request that the Court promptly remand the case back to Minnesota state court, where it belongs.

Dated: September 9, 2020                    Respectfully submitted,

                                           **WATTS GUERRA LLP**

                                           By: __s/ Mikal C. Watts_____
                                                Mikal C. Watts
                                                Texas State Bar No. 20981820
                                                mcwatts@wattsguerra.com
                                                Alicia O'Neill
                                                MN State Bar No. 0401566
                                                aoneill@wattsguerra.com
                                                Francisco Guerra IV (pending *Pro Hac Vice*)
                                                Texas State Bar No. 00796684
                                                fguerra@wattsguerra.com
                                                Erin Rogiers (pending *Pro Hac Vice*)
                                                Texas State Bar No. 24083597
                                                erogiers@wattsguerra.com
                                                5726 W. Hausman Rd., Suite 119
                                                San Antonio, Texas 78249
                                                Telephone:  (210) 448-0500
                                                Facsimile:   (210) 448-0501

                                           ***Attorneys for Plaintiffs***